**Elizabeth THOMPSON, Appellant**

**v.**

**Daniel CURTIS and Dawn Curtis, Appellees.**

**No. 05–02–01192–CV.**

Court of Appeals of Texas, Dallas.

Feb. 27, 2004.

W. Mark Montgomery, Parker & Montgomery, McKinney, for appellant.

Daniel P. Clark, Clark, Browne & Morales, L.C., Dallas, for appellees.

Before Justices MOSELEY, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

A dog owned by Daniel Curtis and Dawn Curtis bit Elizabeth Thompson. She sued the Curtises, alleging strict liability and negligence. The Curtises moved for summary judgment on Thompson's claims, specifically attacking the cause in fact element of proximate and producing causation. The trial court granted summary judgment in the Curtises' favor. In four issues, Thompson contends the trial court erred in granting summary judgment in the Curtises' favor. Because there is evidence in the record raising a genuine issue of material fact on cause in fact, we reverse the trial court's order granting summary judgment and remand this case for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Thompson and the Curtises were next door neighbors. The Curtises kept their dog Shadow in their fenced backyard. Shadow is a Keeshound and Chow mix that was four years old at the time of the incident giving rise to this suit. Prior to this incident, Shadow had escaped from the backyard by chewing through the fence, digging a hole under the fence, or, when it was left open, leaving through the gate. The Curtises had attempted to block the hole under the fence, but Shadow had continued to escape through the hole. Thompson knew Shadow had escaped from the yard on eight to ten occasions in the previous two years. On some of those occasions, Thompson had seen Carol Markes, a neighbor, take Shadow by the collar and walk the dog to the Curtises' backyard. On other occasions, Thompson had seen her husband talk to Shadow, but not touch the dog, and Shadow followed him back to the Curtises' backyard. On about six other occasions, Thompson had called Dan Curtis, and he had come home to put the dog in the yard or had asked Dawn to do it. Thompson had no reason to fear Shadow, although she described Shadow as an "unpredictable" dog and had heard that it growled.

On the afternoon of June 29, 1998, Thompson was gardening in her front yard. Her dog Augie was also in the front yard, leashed to a stake in the ground. Shadow escaped from the Curtises' backyard and walked up to Augie, wagging its tail. Shadow then walked across to Thompson and rubbed up against her leg. Thompson talked to Shadow, but did not touch the dog. Shadow walked back and forth between Thompson and Augie. However, Thompson had to leave and decided to call Dan Curtis to tell him Shadow was out of the yard. Dan Curtis told Thompson that he could not go home for at least an hour because of delays at work. Thompson inferred from the conversation with Curtis that he was telling her to leave the dog alone. Thompson also called Markes. Markes asked her seven- or eight-year-old daughter to get Shadow and put in it the backyard, but her daughter refused because she was afraid that "the dog bites."

Thompson then took Augie into the house and watched Shadow from inside the house. Shadow went into the street and then returned to the Thompson's yard. Thompson went outside, stood by the stake, and called to Shadow, intending to leash Shadow to the stake. The dog went to Thompson and stood by Thompson's left side. With the leash in her right hand, Thompson leaned over and reached for Shadow's collar with her left hand. Shad-

ow bit Thompson's left hand twice. However, Thompson attached Shadow's collar to the leash.

Thompson sued the Curtises, alleging Shadow had vicious and dangerous characteristics and the Curtises were strictly liable for Thompson's damages or, in the alternative, were negligent in keeping a dog with vicious and dangerous characteristics fenced in an area from which it could get out and cause injuries. The Curtises filed a motion for summary judgment or, in the alternative, motion for partial summary judgment, in which they asserted they were entitled to summary judgment as a matter of law on Thompson's negligence and strict liability theories and that Dan Curtis was entitled to summary judgment as a matter of law because the dog belonged to Dawn Curtis and he and Dawn were divorced at the time of the incident. In the alternative, the Curtises moved for partial summary judgment on certain of Thompson's damages claims. The trial court granted summary judgment in the Curtises' favor on the issues of (1) future medical expenses, and (2) loss of earnings and future earnings capacity and denied summary judgment on all other grounds.

Subsequently, the Curtises filed a second motion for summary judgment, in which they asserted that they were entitled to judgment as a matter of law on all causes of action because their actions were not the cause in fact of Thompson's injuries. They relied on excerpts from Thompson's deposition to support their motion. Thompson responded to the motion with evidence which she claimed showed the summary judgment should not be granted. The trial court granted summary judgment in the Curtises' favor. The trial court denied Thompson's motion for new trial. This appeal followed.

## STANDARD OF REVIEW

The standard of review in summary judgment is well-established. *See* TEX.R. CIV. P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). In reviewing a summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference in favor of the nonmovant is allowed, and all doubts are resolved in the nonmovant's favor. *Id.*

To prevail on a traditional motion for summary judgment, a defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). Once a defendant/movant has disproved an element and established his entitlement to judgment as a matter of law, the plaintiff/nonmovant must present evidence to show that a genuine issue of fact exists. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex. 1989); *City of Houston,* 589 S.W.2d at 678.

## PARTIAL SUMMARY JUDGMENT

The record shows that the trial court granted partial summary judgment on certain damage issues. "Once an interlocutory summary judgment is entered, the issues decided cannot be further litigated unless the judgment is set aside by the trial court, or unless the summary judgment is reversed on appeal." *City of Houston v. Socony Mobil Oil Co.*, 421 S.W.2d 427, 430 (Tex.Civ.App.-Houston

[1st Dist.] 1967, writ ref'd n.r.e.). "An interlocutory summary judgment is not appealable until a final judgment is entered disposing of all parties and issues in the cause." *Id.; see Webb v. Jorns,* 488 S.W.2d 407, 408–09 (Tex.1972) (holding that an interlocutory judgment by trial court is merged into final judgment, and thus becomes final for purposes of appeal). However, Thompson does not challenge the partial summary judgment made final and appealable by the final judgment. Therefore, we conclude that the partial summary judgment on the damage issues of (1) future medical expenses, and (2) loss of earnings and future earnings capacity are final as to Thompson. Accordingly, we do not address the propriety of the partial summary judgment. *See Pat Baker Co. v. Wilson,* 971 S.W.2d 447, 450 (Tex.1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error.").

## SUMMARY JUDGMENT EVIDENCE

 We next address the Curtises' argument that the affidavits of Brenda Ibsen Alonso, Meredith Kuehn, and Robert Nelson, offered by Thompson in support of her response to the motion for summary judgment, were not competent summary judgment evidence. The Curtises objected to these affidavits. The trial court did not rule on the objections, and the Curtises reassert their objections on appeal.

As in the trial court, the Curtises object that all three affidavits fail to state how the affiant had personal knowledge. Failure to affirmatively show that the affiant had personal knowledge is a defect in form and must be preserved in the trial court. *Grand Prairie Indep. Sch. Dist. v. Vaughan,* 792 S.W.2d 944, 945 (Tex.1990) (per curiam); *Giese v. NCNB Tex. Forney Banking Ctr.,* 881 S.W.2d 776, 782 (Tex. App.-Dallas 1994, no writ). Because the

Curtises failed to obtain a ruling on this objection in the trial court, it has been waived. Tex.R.App. P. 33.1; *see Giese,* 881 S.W.2d at 782 (without timely objection and ruling, form objections are waived).

 The Curtises reassert their objections that Alonso's affidavit and Kuehn's affidavit are conclusory and thus do not constitute proper summary judgment evidence. A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Rizkallah v. Conner,* 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no writ). Logical conclusions based on stated underlying facts are proper. *Id.* An objection that an affidavit is conclusory is an objection to the substance of the affidavit and may be raised for the first time on appeal. *City of Wilmer v. Laidlaw Waste Sys. (Dallas), Inc.,* 890 S.W.2d 459, 467 (Tex.App.-Dallas 1994), *aff'd,* 904 S.W.2d 656, 660–61 (Tex. 1995).

In her affidavit, Alonso stated that "[t]he Curtis[es] were aware that the dog was problematic." She stated that the Curtises attempted to remedy the problem of Shadow's digging out of the backyard by stacking bricks around a hole under the fence. Also, Alonso stated that she was concerned that the Curtises did not take care of the dog. Additionally, she said that once she went to the fence out of concern for the dog, and the dog was "very aggressive and growled." At other times, she could see that the dog in the backyard, and it was not aggressive. According to Alonso, she told her children to stay away from the dog because it was "unpredictable and erratic."

Kuehn's affidavit stated that Shadow "was known to the neighborhood to be aggressive" and that Dan had trained it to be a watchdog. Kuehn was "personally afraid" of Shadow and would go inside if she saw it out.

We conclude that Alonso's and Kuehn's affidavits state facts to support their conclusions about Shadow's characteristics. They were not conclusory and thus constituted proper summary judgment evidence. *See Rizkallah,* 952 S.W.2d at 587.

■ The Curtises also reassert their objection that Nelson's affidavit is conclusory. In his affidavit, Nelson states that Shadow "had an aggressive attitude." He also stated that Shadow "never actually went after" him. Unlike Alonso and Kuehn, Nelson does not state facts supporting his conclusion that Shadow was "aggressive." *See Feazell v. Mesa Airlines, Inc.,* 917 S.W.2d 895, 900 (Tex.App.-Fort Worth 1996), *writ denied,* 938 S.W.2d 31 (Tex.1997). We conclude that Nelson's affidavit is conclusory. Therefore, this affidavit is not proper summary judgment evidence to be considered on appeal.

## SUMMARY JUDGMENT ON THE MERITS

In issues one, two, and four, Thompson argues that the trial court erred in granting summary judgment in the Curtises' favor because the evidence raises fact issues on proximate and producing cause.

## APPLICABLE LAW

■ To recover on a claim of negligent handling of an animal, a plaintiff must prove: (1) the defendant was the owner or possessor of an animal; (2) the defendant owed a duty to exercise reasonable care to prevent the animal from injuring others; (3) the defendant breached that duty; and (4) the defendant's breach proximately caused the plaintiff's injury. *Allen ex rel. B.A. v. Albin,* 97 S.W.3d 655, 660 (Tex. App.-Waco 2002, no pet.). To recover on a claim of strict liability for injury by a dangerous domesticated animal, a plaintiff must prove: (1) the defendant was the owner or possessor of the animal; (2) the animal had dangerous propensities abnormal to its class; (3) the defendant knew or had reason to know the animal had dangerous propensities; and (4) those propensities were a producing cause of the plaintiff's injury. *Id.* Proximate and producing cause differ in that foreseeability is an element of proximate cause, but not of producing cause. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995). Common to both proximate and producing cause is causation in fact, which means that the defendant's act or omission was a substantial factor in bringing about an injury that would not otherwise have occurred. *Id.* Cause in fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible. *Bell v. Campbell,* 434 S.W.2d 117, 120 (Tex.1968). The evidence "must go further and show that such negligence was the proximate, and not the remote, cause of the resulting injuries" and "justify the conclusion that such injury was the natural and probable result thereof." *Carey v. Pure Distrib. Corp.,* 133 Tex. 31, 35, 124 S.W.2d 847, 849 (1939).

The Curtises rely on *Union Pump* to argue that Thompson's injuries were "too remotely connected" with their conduct to constitute cause in fact. In that case, a pump in a chemical plant caught fire. A plant employee, Allbritton, was directed by her employer to help extinguish the fire. Two hours later, after the fire was extinguished, Allbritton was instructed to help block a valve. She climbed over a pipe rack to do so. In returning from the valve, she attempted to cross the pipe rack, but was injured when she slipped on water or foam from the firefighting. She alleged she would not have walked over the pipe rack but for the fire in the defective pump. *Union Pump,* 898 S.W.2d at 774. The court noted that "the forces generated by the fire had come to rest when [Allbritton] fell off the pipe rack."

*Id.* at 776. "The fire had been extinguished, and Allbritton was walking away from the scene." *Id.* The supreme court concluded that the pump fire did no more than create the condition that made Allbritton's injuries possible, even if the fire were a "but for" cause of Allbritton's injuries. Because the circumstances surrounding Allbritton's injuries were "too remotely connected" with the pump, Union Pump's conduct was not a legal cause of her injuries. *Id.; see Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471–72 (Tex.1991) (where Perez, driving a truck pulling a sign, stopped on roadway, and motorist struck sign, causing injury to Perez, court concludes circumstances causing Perez's injury "too remotely connected" with sign, if defective, to constitute proximate cause); *Bell,* 434 S.W.2d at 118–21 (where first driver's trailer disengaged and overturned, bystanders attempted to remove trailer from highway and were struck by second driver and injured, court concluded that second collision was intervening cause of bystanders' injuries, after first collision "had come to rest" thus relieving first driver of liability).

Relying on Thompson's deposition as evidence in support of their motion, the Curtises asserted that the circumstances of Shadow being out of the Curtises' backyard did nothing more than furnish the condition giving rise to the occasion and injury, and that Thompson's injury was caused by attempting to grasp Shadow's collar, even if that act was not negligent. Thus, the Curtises argued, the effects of their conduct were complete before Thompson's injury occurred. Specifically, they argued that Shadow was out of the yard and Thompson "interacted repeatedly with Shadow without adverse effect or injury." They assert that Thompson would not have been injured if she had not attempted to chain Shadow to the stake, and therefore, their actions only created a condition that made possible Thompson's injury, which occurred as a result of her own act. On appeal, the Curtises estimate that between fifteen and twenty-six minutes elapsed between the time Shadow escaped from their backyard and bit Thompson. In response, Thompson argues that the evidence shows the effects of Shadow's escape from the yard had not ended before she was injured.

In accordance with the standard of review, we must now evaluate the admissible evidence favorable to Thompson. *See Casso,* 776 S.W.2d at 556; *Nixon,* 690 S.W.2d at 548–49. The evidence shows that the Curtises knew that Shadow could escape through a hole in or under the fence. Thompson provided evidence that the Curtises knew that Shadow had bitten a passerby who had stuck his hand through the fence. Dawn Curtis testified that "if Shadow felt threatened in any way by someone, [ ] she could be aggressive." She stated that "if a stranger came into our backyard that she was not aware of, that Shadow could be possibly just kind of defensive, more or less, or, you know, aggressive at that time." Gary Thompson, Elizabeth's husband, testified that "Shadow could be vicious if a stranger approached her, somebody she didn't really know, and if ... she felt threatened." Kuehn's affidavit is evidence that Shadow was trained to be a watchdog and was aggressive. Alonso's affidavit is evidence that Shadow was aggressive and unpredictable.

Although the Curtises argue that Thompson's injuries were too remote temporally and causally from Shadow's escape from their yard, we cannot agree. Unlike *Union Pump, Lear Siegler,* and *Bell,* which the Curtises offered as controlling authority to the trial court and to us, the consequences of Shadow's escape from the Curtises' yard had not come to rest before

Thompson was injured. The Curtises knew that Shadow could become aggressive when threatened and had bitten a person previously. In addition, Dan Curtis knew that, in the past, Thompson called him when Shadow was loose, and that Thompson had not attempted to interact with the dog herself. On those occasions, Dan Curtis returned home to place Shadow back in the yard, or he sent Dawn to do it. Yet, on this occasion, Thompson called Dan Curtis, but he refused to return home. Also, he did not warn Thompson not to touch Shadow because the dog could become aggressive when threatened. Thus, Dan Curtis's conduct and omission were part of the "forces generated" by Shadow's escape that had not come to rest when Shadow bit Thompson and were substantial factors in bringing about Thompson's injuries. *Cf. Union Pump*, 898 S.W.2d at 774–76. Moreover, although the Curtises asserted that Thompson "interacted repeatedly" with Shadow during the twenty-six minutes before Shadow bit her, Thompson's deposition is evidence that there was no physical "interaction" by Thompson until after the call to Dan Curtis, when Thompson attempted to chain Shadow to keep the dog out of the street. Although the Curtises argue that Thompson would not have been bitten but for her own act in attempting to chain Shadow, we conclude the evidence raises a fact issue whether the Curtises knew the dog could be aggressive when threatened.

On appeal, the Curtises assert as controlling authority *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339 (Tex.1998). There, a mental patient was killed when he used an unlocked door to escape, ran half a mile, attempted to hitchhike on both sides of a freeway, and then leapt in front of an oncoming truck as he was about to be apprehended. *Id.* at 434. The supreme court acknowledged that the escape through the unlocked doors was "part of a sequence of events" that ended in suicide, but the court concluded that the use and condition of the doors were "too attenuated" from the death to be said to have caused it. *Id.* We conclude that the Curtises' reliance on *Bossley* is misplaced. The record before us reflects facts showing Shadow's escape and Dan Curtis's refusal to return home were part of the sequence of events and not too attenuated from Thompson's injury to negate the cause in fact element of proximate and producing causation.

We conclude that the evidence raises a fact issue on cause in fact. Accordingly, the trial court improperly granted the Curtises' motion for summary judgment on this issue. We resolve Thompson's first, second, and fourth issues in her favor.

In her third issue, Thompson contends that the evidence shows her injury was foreseeable. Because the Curtises did not move for summary judgment on the issue of foreseeability, we need not address the third issue.

## Conclusion

Having resolved Thompson's first, second, and fourth issues in her favor, we reverse the trial court's May 20, 2002 order granting summary judgment and remand this case for further proceedings. Because Thompson brings no issue or argument as to the June 11, 2001 order on the Curtises' motion for summary judgment, or in the alternative, motion for partial summary judgment, we make no ruling as to the propriety of that order.