

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00025-CV

_____

SHERRY MCGALLIARD, Appellant

V.

KATHRYN HILL, Appellee

On Appeal from the 40th District Court
Ellis County, Texas
Trial Court No. 88284

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Kathryn Hill defends the summary judgment entered in Ellis County[1] against Sherry McGalliard on the basis that Hill's uncontroverted summary-judgment evidence established her right to liquidated damages under the terms of the lease agreement between the parties because, in essence, the grey mare, while not old, "ain't what she used to be."[2]

Hill owned an Andalusian brood mare named Gabacha and leased her to McGalliard to be bred during the lease term. Sometime at or after the end of the lease, the mare was deemed unsound. Hill sued and, based on her unanswered motion for summary judgment and two documents furnished as the only purported summary-judgment evidence offered by either party, obtained a summary judgment against McGalliard for $25,000.00 in liquidated damages and a take-nothing judgment on McGalliard's claims against Hill. Subsequently, after a non-jury trial, Hill was awarded a judgment that included the summary-judgment recovery of $25,000.00 and also awards for $23,000.00 in attorney fees and $2,500.00 in prejudgment interest. On appeal, McGalliard complains that both the summary-judgment hearing and the subsequent bench trial should have been continued until later dates and that her former attorney should not have been permitted to withdraw from representing her. She also attacks the summary judgment on various grounds, including the ground that the evidence is conclusory.

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]From an old folk or political song of unknown or uncertain origin.

We reverse the judgment of the trial court and remand this matter for a new trial, because—although (1) permitting McGalliard's attorney to withdraw was not preserved, (2) hearing the summary judgment when it was heard was not preserved, and (3) denying a continuance of the January bench trial was discretionary—(4) granting the summary judgment was improper, as Hill's contract cause of action was not proven.

*1.       Permitting McGalliard's Attorney to Withdraw Was Not Preserved*

McGalliard argues for the first time on appeal that the trial court erred by permitting her attorney to withdraw without complying with Rule 10 of the Texas Rules of Civil Procedure and with a pending motion for summary judgment and then proceeding to hear and grant the motion. But McGalliard has not preserved this complaint for our review.

For us to review an issue, it must have been preserved in the trial court. *See In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003) ("error preservation in the trial court . . . is a threshold to appellate review"). Generally, to preserve a complaint for appellate review, there must have been presented a timely request, motion, or objection that sets out specific grounds and on which the trial court rules. TEX. R. APP. P. 33.1(a); *Shaw v. Cty. of Dallas*, 251 S.W.3d 165, 174 (Tex. App.—Dallas 2008, pet. denied). Unless that is done, no error is preserved. *Bryant v. Jeter*, 341 S.W.3d 447, 449–50 (Tex. App.—Dallas 2011, no pet.).

Since McGalliard made no objection to the trial court or took any other action regarding this complaint, she has not preserved it for review. We overrule this point of error.

*2.*     *Hearing the Summary Judgment when It Was Heard Was Not Preserved*

McGalliard also argues that the trial court erred in not continuing the summary-judgment hearing, given that her attorney had been allowed to withdraw just six days before the hearing. Because this argument, too, was not brought before the trial court, it is unpreserved for our review. TEX. R. APP. P. 33.1(a); *M.S.*, 115 S.W.3d at 547; *Bryant*, 341 S.W.3d at 449–50.

McGalliard cites *Villegas v. Carter* in support of her argument. *See Villegas v. Carter*, 711 S.W.2d 624 (Tex. 1986). In *Villegas*, the Texas Supreme Court ruled that it was error to deny a continuance of a summary-judgment hearing when the attorney had been allowed to withdraw shortly before the hearing and the client had been unable to obtain her file from the attorney, a file that contained information necessary for the hearing. *Id.* This situation is distinguishable from *Villegas*, in that McGalliard filed no motion for continuance of the summary-judgment hearing, did not claim she was not ready for the hearing, and did not establish that she had not been able to obtain any needed information from her former attorney. McGalliard also cites no authority that the trial court must continue the case sua sponte. Because she has not preserved this point for our review, we overrule this point of error. *See* TEX. R. APP. P. 33.1(a).

*3.*     *Denying a Continuance of the January Bench Trial Was Discretionary*

By contrast, McGalliard did file a written motion that the January trial setting be continued until a later date, so she could properly prepare her case on the merits of the contract cause of action. By doing so, she preserved her appellate complaint that the trial court erred in denying the continuance of the January trial.

4

We review a trial court's ruling on a motion for continuance for an abuse of discretion, without which we will not disturb it. *Villegas*, 711 S.W.2d at 626. On review of a trial court's order denying a motion for continuance, we are to consider whether the trial court committed a clear abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). An abuse of discretion occurs only when the trial court's decision is so arbitrary and unreasonable as to amount to a clear and prejudicial error. *Joe*, 145 S.W.3d at 161; *Marchand*, 83 S.W.3d at 800; *see Aguilar v. Alvarado*, 39 S.W.3d 244, 249 (Tex. App.—Waco 1999, pet. denied).

Here, the trial court engaged in a meaningful dialogue with McGalliard on why she sought to delay the January trial. During her ample opportunity to argue her motion for continuance, McGalliard's argument was based entirely on her desire to develop facts in defense of the contract action, which had already been decided in the earlier summary judgment. She did not argue that she needed more time to properly defend against Hill's claim for attorney fees or prejudgment interest, the sole subjects of the impending January trial. Clearly, the trial court's ruling denying McGalliard's motion for continuance was justified and within its discretion.

We overrule this point of error.

*4.*     *Granting the Summary Judgment Was Improper, as Hill's Contract Cause of Action Was Not Proven*

McGalliard's appeal also attacks the evidentiary support for Hill's traditional summary judgment[3] on two bases, that it was hearsay[4] and that it was conclusory.[5]  While her hearsay complaint is unpreserved for appeal, we agree that at least some of the required elements of Hill's contract cause of action are supported only by conclusory evidence—that is, no evidence—and thus have not been established as a matter of law.

Defects as to form in affidavits must be objected to and the opposing party given an opportunity to amend the affidavit.  TEX. R. CIV. P. 166a(f); *Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied).  Failing to object or to get a ruling on an objection to the form of an affidavit forfeits any objection as to form.  *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.).

A hearsay complaint regarding summary-judgment evidence is one as to form and, thus, is not preserved for appeal unless an objection is made to, and a ruling is obtained from, the trial

---

[3]McGalliard also appeals Hill's no-evidence summary judgment that McGalliard take nothing on her counterclaims against Hill.  But, because McGalliard filed no summary-judgment response or any summary-judgment evidence before the summary-judgment hearing, the no-evidence summary judgment that McGalliard take nothing on her claims against Hill was appropriate.  *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

[4]McGalliard also argues that the summary judgment is unsupported by any evidence.  We understand that to be part of her claim that the evidence is conclusory.

[5]On appeal, there is no complaint that either of the two summary-judgment declarations are not proper summary-judgment affidavits.  For that reason, we do not address that subject.  *See* TEX. R. APP. P. 38.1(f); *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003); *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998); *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 588 (Tex. App.—Texarkana 2012, no pet.); *see also Perkins v. Crittenden*, 462 S.W.2d 565, 568 (Tex. 1970) (summary judgment reversed because unverified copy of necessary promissory note used as summary-judgment evidence, though complaint raised for first time on appeal).  Again, no such complaint has been raised on appeal.

court.  TEX. R. APP. P. 33.1(a)(2); *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 374 (Tex. App.—Dallas 2011, no pet.); *Dolcefino v. Randolph*, 19 S.W.3d 906, 925 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Green v. Indus. Specialty Contractors*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *see also KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 726 (Tex. 2016) (hearsay in affidavit admitted without objection is not without probative value just because it is hearsay) (citing TEX. R. EVID. 802).  Since McGalliard made no objection to the evidence at or before the hearing on summary judgment, no hearsay point, or any other complaint as to form, is preserved for our review.

On the other hand, substantive defects in an affidavit may be raised on appeal without an objection or ruling in the trial court.  *McMahan v. Greenwood*, 108 S.W.3d 467, 498 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).  An affidavit is substantively defective if it is conclusory. *Brown*, 145 S.W.3d at 751; *Choctaw Props., L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235, 241 (Tex. App.—Waco 2003, no pet.); *McMahan*, 108 S.W.3d at 498.

Therefore, we focus our analysis on (A) the elements Hill needed to prove to sustain her claims against McGalliard, (B) the pieces of evidence Hill provided that arguably support each element of proof, and (C) whether each such piece of evidence is conclusory.  If they are conclusory, they must be excluded.  If the remaining evidence is insufficient to sustain the conventional summary judgment favoring Hill, the summary judgment must fail.

To recover on her contract claim for liquidated damages, Hill must have factually established with her summary-judgment evidence that, as of the end of the lease term—apparently September 2013—the mare had a condition that rendered her unsuitable for breeding and for "the

7

remainder of the full range of uses she was able to do at the beginning of the term of the lease"

and that a licensed veterinarian chosen by Hill determined that such condition is likely permanent

and is not a result of heredity or old age. Hill's cause of action can, thus, be broken down into five

essential elements of proof, each of which must have been satisfied: that (a) as of the end of the

lease, the mare had a condition; (b) the condition made her unsuitable for breeding; (c) the

condition also made her unsuitable for the full range of uses she was able to do at the beginning of

the lease; (d) Hill's choice of licensed veterinarians determined that the condition was likely

permanent; and (e) Hill's choice of licensed veterinarians determined that the condition was not a

result of heredity or age.

The only two items provided as summary-judgment evidence were Hill's Declaration and

Kenton Arnold's Declaration. Because of their importance, the salient portions of these two items

are quoted extensively below.

Hill's Declaration provided, in pertinent part, as follows:

3. [A]fter the lease expired, I promptly took [the Mare] to a veterinarian Dr.
Sousa. [Sousa] diagnosed my Horse as having foundered during the time of the
Lease[.] I have subsequently had my Horse examined by Dr. Kenton Arnold for a
follow-up. The Horse continues to suffer from chronic Laminitis. The
founder/laminitis causes my Horse to be unsuitable for breeding and the full range
of uses she was able to perform at the beginning of . . . the Lease. As a result of
the founder, the Horse has no value, or a value that is incapable or difficult to
determine. . . .

4. . . . My veterinarian [Kenton Arnold] states that the founder is permanent
and is not the result of heredity or old age by way of separate Declaration being
filed herewith.

Missing from Hill's Declaration is anything establishing either the actual ending date of the lease

or when the purported examinations by Sousa and Arnold occurred. While Hill may have intended

8

to equate "foundering" of the mare during the lease term with the "chronic Laminitis" she states the mare now suffers from, nothing in either Declaration actually establishes that connection. Hill makes unadorned statements that the mare suffers from chronic Laminitis and that the condition causes her to be unsuitable for breeding and the full range of other uses, but, at least without reference to Arnold's Declaration, does not provide any underlying information to justify or explain those two statements. Her Declaration also does not suggest that she is qualified to make such statements. There is no information of what things ("uses") the mare was able to do at the beginning of the lease, so Hill's Declaration that she was unable to perform those things at the end of the lease cannot be examined, short of taking Hill's word for the statement.

Arnold's Declaration provided, in pertinent part, as follows:

2. I examined . . . Hill's horse "Gabacha" on Monday[,] December 8, 2014. I have also reviewed the veterinary records and radiographs from Equine Medical Associates. . . . I have determined that Gabacha had suffered a laminitic episode within 9-12 months before November 2013, and that as a result, the horse now has a condition known as Chronic Laminitis.

3. Chronic Laminitis also known as Founder is a condition whereby severe inflammation occurs in the laminae tissue that stabilizes the coffin bone within the hoof capsule, causing lameness, including the rotation of the coffin bone, a critical support bone within the foot. Gabacha's founder was not the result of heredity or old age.

4. Gabacha's laminitic condition is chronic and permanent. The horse is relatively stable and comfortable at this time because she is not being used for any purpose. Adding weight to this horse through riding or pregnancy would not be a sound practice because in all reasonable probability adding weight to this horse will cause the founder to become acute and life threatening. Prudent management practice dictates that the mare should . . . not be used.

Arnold's Declaration says nothing about his credentials, other than the initials "DVM." It does not state that he is licensed. Arnold's examination appears to have occurred more than a year after

9

the lease had concluded. His reference to the examination of records from Equine Medical Associates and to a November 2013 time frame might suggest that Equine Medical Associates—without any mentioned connection between that organization and Sousa—had examined the horse in November 2013, something on the order of two months after the lease had ended, and that the records Arnold examined may have been from that examination. But that is speculative. What we know is that Arnold's Declaration does not establish the condition of the horse at the end of the lease. It does not establish that the laminitic episode the horse experienced necessarily happened during the lease or that the chronic laminitis she now suffers was her condition at the end of the lease. It also contains no underlying data or any explanation as to how Arnold reached any of the conclusions he sets out in the Declaration. For instance, he does not say what the records of Equine Medical Associates revealed or on what facts he based his determination that one laminitic episode, occurring up to two years before his examination of the horse, resulted in the chronic laminitis he found on his examination of the horse. As with many of the statements in Hill's Declaration, since his declaration is largely devoid of the factual basis of any of his conclusions, anyone seeking to examine Arnold's Declaration or challenge it is left with taking Arnold's word for his conclusions.

"Bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). "[A] claim will not stand or fall on the mere *ipse dixit* of a credentialed witness." *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999). When an affidavit by an expert witness lacks "a demonstrable and reasoned basis on which to evaluate his [or her] opinion," or contains a "fatal analytical gap" between a recitation of underlying facts and his or her rendered opinion, and thus requires the

10

parties to just take the expert's word for his or her opinion, it is conclusory and cannot be used as summary-judgment evidence. *Elizondo v. Krist*, 415 S.W.3d 259, 264–66 (Tex. 2013).

Conclusory testimony cannot support a judgment. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004); *see Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 661 (Tex. 1995) (recitation of only ultimate facts, without supporting data or explanation, is conclusory).

Focusing just on elements (a)–(c)[6] of Hill's cause of action, we conclude that they are not supported by unconclusory proof.

Element (a), that as of the end of the lease the mare had a qualifying condition, is unsupported. Hill set the initial examination of the mare by Sousa at sometime "after the lease expired" and "promptly" thereafter, not "at the end of the lease" or its equivalent. Hill's Declaration that Sousa diagnosed the mare as having foundered during the lease has two problems rendering it no support for element (a). First, it makes no claim or explanation that the "foundering" event equates with a condition that satisfies all of the other elements of proof. Second it is conclusory in that it is simply a plain statement of Sousa's reported conclusion that foundering occurred and that it occurred during the lease, with no explanation or supporting facts. Because it is not capable of being examined or challenged, it is conclusory.

Elements (b) and (c), that the condition the mare had at the end of the lease made her unsuitable for breeding and that that condition also makes her unsuitable for the uses she had at

---

[6]In this opinion, because our analysis of elements (a) through (c) is dispositive, we do not address whether the summary-judgment evidence as to elements (d) and (e) is conclusory. But we do note that nowhere in the documents offered as summary-judgment evidence is there any proof that Sousa or Arnold is or was licensed.

the beginning of the lease, are also unsupported. Hill attempts to address this with her statement that "the founder/laminitis causes my Horse to be unsuitable for breeding and the full range of uses she was able to perform at the beginning of . . . the Lease." Arnold tries to address these elements in part with his statement that "adding weight to this horse through riding or pregnancy would not be sound practice because[,] in all reasonable probability[,] adding weight to this horse will cause the founder to become acute and life threatening." He adds that "prudent management practice dictates that the mare . . . not be used." Arnold does give some supporting facts explaining that chronic laminitis or founder is an inflammatory condition destabilizing the coffin bone in the horse's hoof. He even offers some connective facts that putting added weight on the horse's hoof would likely cause the chronic condition to become acute and threaten the horse's life. While these statements do tend to support a finding that the mare should not carry a foal, they do not tie that condition to the end of the lease and do not establish what other uses she might have had at the beginning of the lease that she could not do as of the end of the lease.[7] Beyond the conclusory statements in this connection, merely reciting the contract language, which are not competent summary-judgment proof, elements (b) and (c) are unsupported.

Because at least three—and maybe all five—of Hill's necessary elements to establish her summary judgment are unsupported by competent summary-judgment evidence, the summary judgment cannot stand.

---

[7]For instance, it appears from the nature of the lease that much of the mare's value has been related to her breeding or genetics. Nothing in the Declarations of Hill or Arnold establish that she could not be used as a source of eggs for fertilization and implantation in another mare who does not have the genes for which this mare has been valued.

Because of the foregoing, we reverse the judgment below in its entirety and remand this case to the trial court for a new trial.

Josh R. Morriss, III
Chief Justice

Date Submitted:     October 20, 2016
Date Decided:       October 27, 2016