

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00077-CV

**ELECTRO SALES AND SERVICES, INC.** and Salim Merchant,
Appellants

v.

**CITY OF TERRELL HILLS**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-19821
Honorable Michael E. Mery, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Karen Angelini, Justice
               Rebeca C. Martinez, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  March 14, 2018

AFFIRMED

Appellants Electro Sales and Services, Inc. and Salim Merchant appeal the trial court's order granting summary judgment in favor of the City of Terrell Hills. They assert (1) the trial court had jurisdiction to consider Appellants' regulatory taking claim, and (2) the trial court erred in granting summary judgment because a genuine issue of material fact exists as to whether the City's actions constituted a regulatory taking. We affirm the trial court's judgment.

**BACKGROUND**

On June 7, 2011, Appellants purchased a strip center from Billy Y. Eng and Gin Wei Eng. The strip center consists of three rental spaces or suites located in a single building. It is undisputed that the strip center was rezoned from commercial to semi-commercial use in the 1960s. At that time, the two end suites were being operated as a convenience store and a bar, and the middle suite was being operated as a laundromat. As a result, the nonconforming commercial use of the suites was grandfathered and allowed to continue unless vacated for six months.[1] Before the Engs sold the strip center to Appellants, the middle suite was vacant for more than six months, and the City notified the Engs that the middle suite had lost its nonconforming use rights and was thereafter limited to semi-commercial use. Appellants and the Engs dispute whether the Engs disclosed this information to Appellants.

On June 13, 2011, Appellants sent a letter to the City applying to rezone the strip center from semi-commercial to commercial. The City considered the application at its August 8, 2011 city council meeting. At the meeting, a resident whose home is located directly behind the strip center expressed concern at being unable to control the types of businesses that could open if the strip center was zoned commercial. The minutes reflect the resident expressed concern about "problems over the years with disturbances from the 'drunks and derelicts' that hang out in the parking lot." One of the council members commented that the strip center was in "a transition area and there are immediate neighbors that are directly affected by whatever business could possibly open at th[e] location." The city council voted to deny the rezoning request.

---

[1] The ordinance describing the rezoning and the grandfathering of the nonconforming use is not contained in the appellate record; therefore, this description of the nonconforming use rights is based on the description provided by the parties.

On July 10, 2012, Appellants' attorney sent another request to rezone the strip center from semi-commercial to commercial. After discussing the request at a meeting on October 8, 2012, the city council did not take any action on the request but decided to schedule a meeting to discuss amending the city ordinance to allow for the issuance of special use permits.

On December 10, 2012, the city council amended the City's ordinance to provide for special use permits in semi-commercial zoning districts. The amendment contained an application process and procedures for considering a special use permit application. The amendment required a special use permit application to be accompanied by a site plan prepared to scale and meeting various specific requirements.

On December 12, 2012, Appellants sent a letter to the City applying for a special use permit to open a barber shop and beauty parlor. The letter contained in the appellate record was not accompanied by a site plan. On May 13, 2013, the city council signed an ordinance approving the special use permit for a hair and nail salon.

On January 10, 2013, Appellants filed the underlying lawsuit against the City and the Engs. Appellants alleged regulatory taking and declaratory judgment claims against the City. Appellants also alleged fraud, negligent misrepresentation, and statutory fraud claims against the Engs.

On February 5, 2014, appellants sent a letter to the City requesting a special use permit to open a barber shop. The letter contained in the appellate record was not accompanied by a site plan. On April 13, 2015, the city council signed an ordinance approving a special use permit for a hair and nail salon.

On August 16, 2016, the City moved for summary judgment in the underlying lawsuit, asserting traditional and no-evidence grounds. After considering the City's motion, Appellants' response, and the City's reply, the trial court signed an order granting the City's motion. The

claims against the City were then severed into a separate cause making the trial court's order final and appealable.[2] The appellants appeal.

## STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Hansen*, 525 S.W.3d at 681.

> A [no evidence] motion for summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (2) the respondent [fails to produce more than a scintilla of] summary judgment evidence raising a genuine issue of material fact on those elements.

*Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) ("More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.") (quotation marks omitted). Whether reviewing a traditional or no evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant "and resolve any doubts in the nonmovant's favor." *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

"Where, as here, a trial court does not specify the grounds on which it granted the motion for summary judgment, we must affirm if any of the grounds asserted in the motion are meritorious." *Hansen*, 525 S.W.3d at 680. "Further, when the motion asserts both no-evidence and traditional grounds, we first review the no-evidence grounds." *Id.*

---

[2] Appellants' claims against the Engs were left pending in the original cause.

**JURISDICTIONAL GROUNDS**

In its motion, the City asserted three grounds challenging the trial court's jurisdiction to consider the appellants' regulatory taking claim.[3] We first consider each of these grounds.

**A.      Immunity**

The City asserted the trial court did not have jurisdiction to consider the appellants' regulatory taking claim because its immunity was not waived.  The City's assertion of immunity was based on its contention that the appellants had not alleged a viable claim.

"It is well settled that the Texas Constitution waives government immunity with respect to inverse-condemnation claims."  *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014); *accord Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476–77 (Tex. 2012) (recognizing a regulatory taking claim is an inverse condemnation claim).  "Nevertheless, such a claim is predicated upon a viable allegation of taking."  *Carlson*, 451 S.W.3d at 830.

"A regulatory taking occurs when [a] regulation (1) compels 'the property owner to suffer a physical invasion of his property,' (2) 'denies all economically beneficial or productive use of land,' or (3) 'does not substantially advance legitimate state interests.'"  *Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 575 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Sheffield Dev. Co., v. City of Glenn Heights*, 140 S.W.3d 660, 671 (Tex. 2004)).  "Otherwise, however, whether regulation has gone 'too far' and become too much like a physical taking for which the constitution requires compensation requires a careful analysis of how the regulation affects the balance between the public's interest and that of private landowners."  *Sheffield Dev. Co.*, 140 S.W.3d at 671–72.  "While each case must therefore turn on its facts, guiding considerations can be identified, including: (1) the economic impact of the regulation on the claimant; (2) the extent

---

[3] In their brief, Appellants challenge the summary judgment only as to their regulatory taking claim.  Accordingly, they have waived any complaint with regard to their declaratory judgment claim.  *See* TEX. R. APP. P. 38.1(i).

to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Vill. of Tiki Island*, 463 S.W.3d at 575 (quoting *Sheffield Dev. Co.*, 140 S.W.3d at 671–72) (quotation marks omitted).

In their petition, Appellants alleged the City's denial of their rezoning request "denied [them] all economically viable use of the middle space or unreasonably interfered with [their] right to use and enjoy the property." Accordingly, Appellants alleged a viable regulatory taking claim. *See Rowlett/2000, Ltd. v. City of Rowlett*, 231 S.W.3d 587, 589, 591 (Tex. App.—Dallas 2007, no pet.) (analyzing whether city's refusal to rezone property constituted a regulatory taking); *Weatherford v. City of San Marcos*, 157 S.W.3d 473, 478, 489–91 (Tex. App.—Austin 2004, pet. denied) (same).

## B.      Standing

The City also moved for summary judgment on the basis that Appellants lacked standing to assert their claim. The City asserted the semi-commercial zoning classification was implemented in the 1960s, and the expiration of the middle suite's nonconforming use rights occurred prior to the sale of the strip center to Appellants. The City also asserted it had not taken any action to restrict Appellants' use of the strip center, but instead had granted Appellants' requests for special use permits.

A person has standing to sue when he or she is personally aggrieved by an alleged wrongdoing. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848–49 (Tex. 2005) (quoting *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)); *Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728, 731–32 (Tex. App.—Texarkana 2003, no pet.). "The right to sue for [an] injury [to real property] is a personal right belonging to the person owning the property at the time of the injury." *Denman*, 123 S.W.3d at 732. "A mere subsequent purchaser cannot recover for an injury committed before his or her purchase." *Id.*

In this case, both the change in zoning from commercial to semi-commercial use and the City's decision that the middle suite had lost its nonconforming use rights occurred before Appellants purchased the strip center. Accordingly, Appellants do not have standing to sue for any injury caused by those decisions. However, Appellants were personally aggrieved by the City's denial of their rezoning request; therefore, they have standing to sue for any injury caused by that decision. *See Lovato*, 171 S.W.3d at 848–49; *Denman*, 123 S.W.3d at 731–32.

## C. Ripeness

In Appellants' brief, they refer to their "request for a rezoning of the property from semi-commercial to commercial or, in the alternative, to reinstate the previous non-conforming use exception." In its brief, the City challenges the appellants' reference to its refusal to reinstate the middle suite's nonconforming use.

"Ripeness is an element of subject matter jurisdiction." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). An essential prerequisite to the ripeness of a regulatory takings claim is a "'final and authoritative determination' by the governmental entity applying the regulations at issue to the property." *City of Galveston v. Murphy*, 533 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (quoting *Mayhew*, 964 S.W.2d at 929). In this case, the record does not establish Appellants ever made a request that the City reinstate the previous nonconforming use exception; therefore, any claim based on the refusal of such a request is not ripe for our consideration.[4]

---

[4] Appellants also refer to the City erroneously interpreting its ordinance with regard to the expiration of the nonconforming use rights for the middle suite. To the extent Appellants could establish they were personally aggrieved by the decision because the middle suite should continue to have nonconforming use rights, Appellants never presented that challenge to the city council and therefore never sought a "final and authoritative determination" from the City regarding that decision. Similarly, although Appellants question whether a barbershop should be considered a commercial use, Appellants never sought a "final and authoritative determination" from the City regarding whether a barbershop is a commercial or semi-commercial use.

**D.      Conclusion**

After considering the jurisdictional grounds asserted in the City's motion, we conclude the trial court had jurisdiction to consider Appellants' regulatory taking claim based on the City's denial of Appellants' request to rezone the property.  Accordingly, we next consider whether summary judgment was proper as to that claim on any other ground raised in the City's motion.

NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

In its brief, the City asserts Appellants have not raised any issue challenging the grounds raised in the City's no-evidence motion.  In their brief, however, Appellants assert they "presented some evidence of each of [the] elements" or "discrete considerations in ascertaining the public-private balance of the City's restrictions."  Appellants further assert that "because the evidence is judged in a light favorable to the non-movant, a no-evidence summary judgment on any part of the balancing test is inappropriate.  Because there is a genuine issue of material fact regarding that balance and whether the restrictions go too far, summary judgment is improper . . . ." (citation omitted).  Therefore, we disagree with the City's assertion and next consider whether the summary judgment was properly granted on no-evidence grounds.  *See Hansen*, 525 S.W.3d at 680 (noting when a motion for summary judgment "asserts both no-evidence and traditional grounds, we first review the no-evidence grounds").

**A.      Type of Regulatory Taking Alleged in Appellants' Original Petition**

As previously noted, a regulatory taking can occur when a regulation (1) compels the property owner to suffer a physical invasion of his property, (2) denies all economically beneficial or productive use of land, (3) does not substantially advance legitimate state interests,[5] or (4) goes

---

[5] In *Lingle v. Chevron U.S.A., Inc.*, the Supreme Court held the "substantially advances" formula was no longer a valid regulatory taking test.  544 U.S. 528, 531–32 (2005).  "In light of *Lingle*, the continued validity of the [substantially advances] test for purposes of state constitutional law may be the subject of further consideration by the Texas Supreme Court."  *Rowlett/2000, Ltd.*, 231 S.W.3d at 595.

"too far" and "become[s] too much like a physical taking." *Sheffield Dev. Co.*, 140 S.W.3d at 671–72. Before addressing whether Appellants produced more than a scintilla of evidence on the elements of their regulatory taking claim, we must first determine the type of regulatory taking claim alleged by Appellants in their petition. In their petition, Appellants alleged the City's actions "denied Plaintiff all economically viable use of the middle space or unreasonably interfered with Plaintiff's right to use and enjoy the property." Therefore, Appellants alleged only the second and fourth types of regulatory taking.

In their brief, Appellants not only argue summary judgment was improperly granted on the second and fourth types of regulatory taking, but they also argue the City's refusal to rezone the strip center does not substantially advance legitimate state interests. Because Appellants did not allege that type of regulatory taking in their petition, we need not address Appellants' arguments regarding the third type of regulatory taking.[6]

### B.      Denial of All Economically Beneficial or Productive Use of Land

"A restriction denies the landowner all economically viable use of the property or totally destroys the value of the property if the restriction renders the property valueless." *Mayhew*, 964 S.W.2d at 935. "Determining whether all economically viable use of a property has been denied entails a relatively simple analysis of whether value remains in the property after the governmental action." *Id.* "This type of taking is limited to the extraordinary circumstance when no productive or economically beneficial use of land is permitted and the landowner is left with a token interest."

---

[6] We note Appellants argued the City had the burden to present evidence that their denial of the rezoning request substantially advanced a legitimate state interest. We question such an argument in response to a no-evidence motion because Appellants had the burden to prove their regulatory taking claim. *See Battista v. City of Alpine*, 345 S.W.3d 769, 775–76 (Tex. App.—El Paso 2011, no pet.). However, we note the City presented the minutes from the August 8, 2011 city council meeting in which one of the council members commented that the property was in "a transition area and there are immediate neighbors that are directly affected by whatever business could possibly open at th[e] location." This comment was preceded by concerns expressed by a resident whose home was located directly behind the strip center.

*City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 245 (Tex. App.—San Antonio 2006, pet. denied) (quotation marks omitted) (quoting *Sheffield Dev. Co.*, 140 S.W.3d at 671).

In this case, it is undisputed that Appellants continue to receive income from the rental of the two end suites. Therefore, Appellants did not and could not produce any evidence that the strip center was rendered valueless by the City's denial of Appellants' rezoning request. *See Strother v. City of Rockwell*, 358 S.W.3d 462, 471–72 (Tex. App.—Dallas 2012, no pet.) (affirming no-evidence summary judgment on claim that property was rendered valueless where evidence established plaintiff was still receiving rent for property); *City of Houston v. Trail Enters., Inc.*, 377 S.W.3d 873, 879 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("The analysis focuses on the parcel of land as a whole and not discrete segments of the parcel.").

## C.      Whether the Regulation Goes "Too Far"

When we consider "whether [a] regulation has gone 'too far' and become too much like a physical taking for which the constitution requires compensation, [we must conduct] a careful analysis of how the regulation affects the balance between the public's interest and that of private landowners." *Sheffield Dev. Co.*, 140 S.W.3d at 671–72.

> While each case must therefore turn on its facts, guiding considerations can be identified, . . . [including] [(1)] '[t]he economic impact of the regulation on the claimant,' . . . [(2)] 'the extent to which the regulation has interfered with distinct investment-backed expectations,' . . . [and (3)] 'the character of the governmental action.'

*Id.* at 672 (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).

### *1.      Economic Impact*

The economic impact of the regulation on the claimant "compares the value that has been taken from the property with the value that remains in the property, [and] [t]he loss of anticipated gains or potential future profits is not usually considered in analyzing this factor." *Mayhew*, 964 S.W.2d at 935–36.

The only summary judgment evidence presented by Appellants in response to the City's motion was the affidavit of Salim Merchant. In his affidavit, Merchant does not explain how the City's refusal to rezone the strip center decreased its value. Although Merchant states he has been unable to lease the middle suite, he provides no evidence that the space cannot be leased for semi-commercial use. *See Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 287 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (noting affidavit that does not provide factual support is not proper summary judgment evidence); *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.) (noting a statement is conclusory if no underlying facts are provided). Furthermore, Merchant's loss of potential profit "is not usually considered in analyzing this factor." *Mayhew*, 964 S.W.2d at 936; *see also Appaloosa Dev., LP v. City of Lubbock*, No. 07-13-00290-CV, 2014 WL 3906458, at *2 (Tex. App.—Amarillo Aug. 11, 2014, no pet.) (mem. op.) (holding loss of profit the appellant anticipated earning if request to change zoning was granted was not a proper consideration); *Weatherford*, 157 S.W.3d at 490 (refusing to consider that property would be worth more if it was rezoned as evidence that regulation affected value of property).

### 2. *Investment-Backed Expectation*

With regard to the investment-backed expectation of the landowner, "[t]he existing and permitted uses of the property constitute the 'primary expectation' of the landowner that is affected by regulation. Knowledge of existing zoning is to be considered in determining whether the regulation interferes with investment-backed expectations." *Mayhew*, 964 S.W.2d at 936. "The purpose of the investment-backed expectation requirement is to assess whether the landowner has taken legitimate risks with the reasonable expectation of being able to use the property, which, in fairness and justice, would entitle him or her to compensation." *Edwards Aquifer Auth. v. Bragg*, 421 S.W.3d 118, 142 (Tex. App.—San Antonio 2013, pet. denied). "[T]he regulatory regime in

place at the time the claimant acquires the property at issue helps to shape the reasonableness of a claimant's investment-backed expectations." *Id.* at 143 (alteration in original).

In this case, it is undisputed that the strip center was zoned semi-commercial before Appellants purchased the property, and Merchant acknowledged in his affidavit that the middle suite had "lost its non-conforming use." Therefore, the zoning of the strip center could not interfere with Appellants' investment-backed expectations because the zoning was in existence when the appellants purchased the property. Thus, there is no evidence of interference with investment-backed expectations. *See Appaloosa Dev., L.P.*, 2014 WL 3906458, at \*3 (noting denial of request to change zoning "had no effect on the permitted uses of the property").

### 3. *Character of the Governmental Action*

Finally, the character of the governmental action must be considered. In denying Appellants' request, one council member noted the property was in "a transition area and there are immediate neighbors that are directly affected by whatever business could possibly open at th[e] location." *See id*. at \*4 (analyzing reason for zoning decision in discussing character of the governmental action). In addition, although the City denied Appellants' request, the City amended its ordinance to provide a procedure for Appellants to obtain special use permits. Finally, the City granted both of Appellants' applications for special use permits. Although Merchant asserts in his affidavit that obtaining special use permits takes "months," he provided no evidence to support his assertion. Merchant's conclusory assertion is no evidence that any delay was the City's fault rather than Appellants'. *See Brown*, 414 S.W.3d at 287 (noting affidavit that does not provide factual support is not proper summary judgment evidence); *Thompson*, 127 S.W.3d at 450 (noting statement is conclusory if no underlying facts are provided). The summary judgment evidence establishes that the two letters Merchant sent requesting special use permits did not meet several

of the application requirements contained in the ordinance, including the requirement that the application be accompanied by a site plan meeting specific requirements.

### 4.     *Conclusion*

Based on the foregoing, we conclude Appellants failed to produce more than a scintilla of evidence to show the City's denial of their rezoning request went "'too far' and [became] too much like a physical taking." *Sheffield Dev. Co.*, 140 S.W.3d at 671–72.  Therefore, the trial court properly granted the City's no-evidence motion for summary judgment.  We need not consider the traditional motion.  *See Hansen*, 525 S.W.3d at 680–81.

## CONCLUSION

Because the trial court properly granted the City's no-evidence motion for summary judgment on the only regulatory taking claim the trial court had jurisdiction to consider, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice