Cathy **STROTHER**, Appellant,

v.

**CITY OF ROCKWALL**, Appellee.

No. 05–10–01348–CV.

Court of Appeals of Texas, Dallas.

Jan. 27, 2012.

D. Brent Lemon, Law Office of D. Brent Lemon, Dallas, TX, for Appellant.

James C. Tidwell and Pete Eckert, Wolfe, Tidwell & McCoy, LLP, Sherman, TX, for Appellee.

Before Justices BRIDGES, O'NEILL, and LANG.

## OPINION

Opinion By Justice O'NEILL.

In this inverse condemnation case, appellant Cathy Strother appeals the trial court's granting of the City of Rockwall's plea to the jurisdiction and traditional and no-evidence motions for summary judgment. We affirm the trial court's judgment.

### Background

In June of 2007, appellant filed her original petition against the City of Rockwall (the "City") alleging the City had violated article 1, section 17 of the Texas Constitution by taking, damaging, destroying, or applying her property for public use without adequate compensation or unreasonably interfering with her right to use and enjoy her property.

According to her petition, appellant owns 2 acres of improved real property located at 2430 S. Highway 205 in Rockwall, Texas. Three commercial buildings are located on the property, which she currently leases to tenants. According to the FEMA Flood Insurance Rate Map, a portion of the property, but none of the buildings, are located within the one-hundred-year flood plain.

In March of 2007, appellant entered into a contract to sell the property for $600,000. Subsequently, the City allegedly told the buyers the property was in the flood plain and essentially unusable. The City said no changes could ever be made to the property, and it would never again issue certificates of occupancy for the property. The buyers terminated the contract.

Appellant alleges the City knew its actions would result in harm to her or knew that harm was substantially certain to occur. Such acts and statements by the City resulted in immediate, substantial, and unreasonable interference with her ability to sell the property. Appellant sought a declaration from the trial court regarding her rights under the Texas Constitution.

The City filed special exceptions and a general denial. It also asserted the trial court lacked jurisdiction because appellant failed to overcome the City's immunity. The City then filed a plea to the jurisdiction and alternative motions for summary judgment.

In its plea to the jurisdiction, the City argues appellant's claims are based on a determination by FEMA that certain flood plains apply to her property, but such actions did not result in a taking. In 2002, the City retained Nationwide Water Resource Services, Inc. ("NWRS") to pre-

pare a master drainage study. The primary purpose of the study was to provide a detailed assessment and documentation of storm water drainage within the City. The study took place over a period of years. During NWRS's investigation, it determined that prior map elevation data contained discrepancies. Some of the elevations used in the prior study for an anticipated one-hundred-year flood were more than five feet too low.

After further meetings and investigations, in October 2006, FEMA issued its preliminary Flood Insurance Study and Digital Flood Insurance Rate Maps, which included revisions to prior FEMA maps affecting appellant's property. The City argues its only involvement with appellant's property was to have a Master Drainage Study prepared by NWRS, which included the whole City, and to comply with FEMA's requests and regulations. It did not engage in any action to take appellant's property nor has it given appellant notice of any intent to stop the property's existing use. "In essence, Plaintiff is suing the City for FEMA revising its maps to correctly show actual conditions and moving a FEMA designation line." By complying with federal law, the City argues it has not taken appellant's property.

Appellant amended her original petition and included facts alleging the City conducted various activities on or near her land that resulted in water flooding her property after significant rainfall, which did not occur prior to the City's activities. She added causes of action for negligent and intentional diversion of water, nuisance, trespass, and violation of water code section 11.086.

The City filed a supplement to its plea to the jurisdiction and alternative motions for summary judgment to include further evidence in support of its claim that the trial court lacked jurisdiction. It also addressed the new claims raised by appellant in her first amended original petition. Appellant responded by objecting to certain evidence included in the City's plea and by arguing the City's conduct and regulations have rendered her property unusable and worthless. Appellant's response also included her affidavit about the events in question. The City objected to appellant's affidavit on several grounds, including that it contained hearsay, was conclusory, and contained improper opinions.

After reviewing all the pleadings and conducting a hearing, the trial court granted the City's plea to the jurisdiction and alternative motions for summary judgment under both rule 166a and 166a(i). It dismissed all claims against the City. This appeal followed.

## Standard of Review

Sovereign immunity defeats a trial court's subject matter jurisdiction and therefore is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex.2004); *Town of Fairview v. Lawler*, 252 S.W.3d 853, 855 (Tex.App.-Dallas 2008, no pet.). Whether a court has subject matter jurisdiction is a question of law. *Miranda*, 133 S.W.3d at 226.

The plaintiff bears the burden of alleging facts affirmatively showing the trial court has subject matter jurisdiction. *Id.* We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227. After reviewing the pleadings and evidence, if the evidence is undisputed or fails to raise a fact question on

the jurisdictional issue, governmental immunity applies and the trial court should grant the plea to the jurisdiction. *Id.* at 228; *City of Dallas v. Blanton,* 200 S.W.3d 266, 272 (Tex.App.-Dallas 2006, no pet.).

■■ This standard generally mirrors that of a traditional motion for summary judgment under rule of evidence 166a(c). *See* TEX.R. EVID. 166a(c); *Miranda,* 133 S.W.3d at 228. When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. *Miranda,* 133 S.W.3d at 228. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

In a no-evidence summary judgment motion, the movant contends there is no evidence of one or more elements of the claims for which the non-movant would bear the burden of proof at trial. TEX.R. CIV. P. 166a(i). The trial court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.* The respondent is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX.R. CIV. P. 166a(i) cmt. (1997). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005).

### Applicable Law

■ A prohibition against the taking of property for public use without just compensation is set forth in article I, section 17 of the Texas Constitution, which provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17; *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 933 (Tex.1998). To state a cause of action for inverse condemnation, a plaintiff must allege (1) an intentional governmental act; (2) that resulted in her property being taken, damaged, or destroyed; (3) for public use. *Blanton,* 200 S.W.3d at 271.

■ Takings are classified as either physical or regulatory. *Mayhew,* 964 S.W.2d at 933. A physical taking is an unwarranted physical appropriation or invasion of the property. *Id.* When a governmental entity physically damages private property in order to confer a public benefit, the entity may be liable under article I, section 17 if it (1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an unauthorized governmental action— that is, the damage is "necessarily an incident to, or necessarily a consequential result of" the government's action. *City of Dallas v. Jennings,* 142 S.W.3d 310, 314 (Tex.2004).

■ A regulatory taking can occur when a governmental entity imposes restrictions that either deny a property owner all economically viable use of her property or unreasonably interferes with the owner's right to use and enjoy the property. *Mayhew,* 964 S.W.2d at 935. A diminution in market value may or may not constitute a compensable taking. *Blanton,* 200 S.W.3d at 274. Recognizing that the government should not be expected to pay for every diminution in value caused by changes in the general law, the supreme court has stated there is not a single solution or set formula for determining when compensation is required. *Id.* Rather, the

resolution of the issue requires a "careful analysis of how the regulation affects the balance between the public's interest and that of private land owners." *Sheffield Dev. Co. v. City of Glenn Heights,* 140 S.W.3d 660, 670–72 (Tex.2004).

When determining if a governmental restriction unreasonably interferes with the property owner's right to use and enjoy the property, courts consider many factors in striking this balance, but the factors are not exhaustive and must be considered in light of the circumstances of each case. *Id.* An allegation of unreasonable interference with an owner's use and enjoyment of property must state a direct, immediate, and substantial impact on the property, making it unusable for its intended purpose. *Cummins v. Travis Cnty. Water Control & Improvement Dist. No. 17,* 175 S.W.3d 34, 54–55 (Tex.App.-Austin 2005, pet. denied). These factors include (1) the economic impact on the claimant, (2) the extent to which the regulation interfered with investment-backed expectations, and (3) the character of the governmental action. *Id.* at 672–73.

### Discussion

While the trial court granted the City's plea to the jurisdiction, traditional motion for summary judgment and no-evidence motion for summary judgment, we will begin our analysis with the no-evidence motion for summary judgment. *See Kalyanaram v. Univ. of Tex. Sys.,* 230 S.W.3d 921, 925 (Tex.App.-Dallas 2007, pet. denied) ("When the motion for summary judgment presented both no-evidence and traditional grounds, we first review the propriety of the summary judgment under the no-evidence standards of rule 166a(i).").

The City contends appellant has presented no evidence that it has taken any intentional act to cause flooding to her property, denied her all economically viable use of the property, or unreasonably interfered with her right to use and enjoy the property. Appellant argues a physical taking (the flooding) as well as a regulatory taking (refusal to issue new certificates of occupancy) occurred to her property based on the City's actions.

We first address whether a physical taking of appellant's property has occurred. In support of its plea to the jurisdiction and motions for summary judgment, the City included the affidavit and deposition of Charles Todd, P.E., the City engineer and director of public works, the deposition of Dwayne Stubblefield, a civil engineer specializing in water resources, hydrology, and surface water hydraulics, and excerpts from appellant's oral deposition.

Todd testified during his deposition that he received his civil engineering degree from Texas Tech University, specializing in hydraulics/hydrology, and is a certified professional engineer. He is also familiar with conducting and reviewing flood studies. When asked if he believed any of the increase in the 100–year flood elevation was the result of development that had taken place within the City, he testified no. In his affidavit, he stated, "The City has not taken action to divert surface water or other water onto Plaintiff's property. Similarly, I am not aware of any action by the City that would have created any physical invasion or flooding of the Plaintiff's property."

Appellant objected to and challenged many of the statements in Todd's affidavit as inaccurate and conclusory. The record does not indicate the trial court ruled on her objections. A party who objects to summary judgment evidence must have those rulings reflected in the record or show where a request for a ruling and record was denied by the trial

court. Otherwise, the objection is waived. *Mitchell v. Baylor Univ. Med. Ctr.,* 109 S.W.3d 838, 842 (Tex.App.-Dallas 2003, no pet.). However, an objection that an affidavit is conclusory goes to the substance of the affidavit, rather than form, and may be raised on appeal. *Thompson v. Curtis,* 127 S.W.3d 446, 450 (Tex.App.-Dallas 2004, no pet.). Thus, we will consider whether Todd's affidavit is conclusory.

 In addition to establishing his background as a professional engineer with a background in hydrology/hydraulics, Todd stated that as the city engineer, his department initiated the flood study. The study was not directed or related to appellant's property but addressed a wide range of water sheds and flood plains in the area. It was not limited to a particular area in the City or a particular property. The study was used to ensure the City was using the best available information, and there was no intent to deprive any person of their property or use of their property. "At the time the study was initiated, it was not anticipated that such discrepancies would be located or that the FEMA designations related to Plaintiff's property would change. However, a more detailed study of Buffalo Creek revealed that prior, less exact studies, had not properly mapped its characteristics."

He explained the overall drainage study, NWRS's involvement, and the discrepancies in the 1992 FEMA maps. He also noted he was generally familiar with appellant's property. He further stated the City has not altered, built, or constructed anything on appellant's property or adjacent to it that would divert surface water onto her property. Accordingly, Todd provided the factual background to support his conclusions; therefore, his affidavit is proper summary judgment evidence we may consider. *See Aloha Leasing v. Legal Ease Overnight Reproduction Serv.,* *Inc.,* 05–97–01619–CV, 2000 WL 190131, at *2 (Tex.App.-Dallas 2000, no pet.) (not designated for publication) (holding affidavit was not conclusory when it set out facts supporting conclusions).

In addition to Todd's testimony, the City provided deposition testimony, which appellant did not object to, from Stubblefield. He was the engineer primarily responsible for the multi-year master drainage study. He spent approximately sixty-eight hours reviewing and gathering documents in preparation for his deposition. He testified that there were no documents, to his knowledge, which reflected any acts or omissions by the City that resulted in the majority of appellant's property being within the 100–year flood plain. "This property is in the flood plain and, to the best of my knowledge, has always been naturally within the flood plain due to its physical location and elevation."

In an attempt to raise a fact issue and present evidence to avoid summary judgment, appellant submitted her affidavit in which she disputed numerous statements made by Todd. The City objected that appellant failed to show she was qualified to state opinions regarding flooding, drainage, and hydrology. It further objected that many of her statements were conclusory, based on hearsay, and speculative. The trial court did not rule on these objections.

 As previously stated, a party who objects to summary judgment evidence must have those rulings reflected in the record or they are waived. *Mitchell,* 109 S.W.3d at 842. Whether appellant's statements were speculative or contained hearsay are objections to form, which must be ruled on by the trial court or they are waived. *See McMahan v. Greenwood,* 108 S.W.3d 467, 498 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Montemayor v. Chapa,* 61 S.W.3d 758, 763 (Tex.App.-Cor-

pus Christi 2001, no pet.) (hearsay is an objection to form). However, an objection that an affidavit is conclusory may be raised on appeal. *Thompson*, 127 S.W.3d at 450. Further, the failure of an affiant to establish her qualifications as an expert is a substantive objection that may be raised on appeal. *See Hofland v. Williamsburg Two Homeowners Ass'n, Inc.*, 05–02–00820–CV, 2002 WL 31730966, at *3 (Tex.App.-Dallas 2002, no pet.) (not designated for publication). Accordingly, we shall review the City's objections to appellant's conclusory statements and to whether she is qualified to provide her opinion on flooding issues.

■ Appellant states in her affidavit "I have reviewed the Affidavit and Supplemental Affidavit of Charles Arthur 'Chuck' Todd, P.E .... the Affidavit and Supplemental Affidavit are inaccurate." She then points out statements she believes are inaccurate based on her interpretation of the FEMA map and based on her belief the City intentionally and knowingly engaged in actions and alterations that caused flooding to her property. For example, she states, "In connection with, and with intent to harm me, the City of Rockwall stated that the Property was in the flood plain and was unusable." She also states, "The development approved and permitted by the City of Rockwall is the issue and has caused the problems ... [it] approved and permitted development and water drainage alterations that anyone could reasonably determine would flood my Property."

Appellant has not established that she has any expertise in reading flood maps, the studies provided by the City, or that she has any independent knowledge and expertise in hydrology. Lay witnesses are not competent to controvert an expert opinion. *See Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 274 (Tex.App.-Austin

2002, pet. denied). In fact, during Stubblefield's deposition, appellant questioned why certain studies had not been performed, and her attorney stated, "Let's hire an expert to tell us." The record, however, does not reflect she ever hired an expert despite her attorney's acknowledgment that one would be beneficial.

■ Appellant repeatedly says the City engaged in actions that intentionally or knowingly caused damage to her property. However, she fails to refer to any specific development or alterations that allegedly caused the flooding. Thus, her bare assertions the City engaged in intentional and knowing conduct are conclusory. Mere conclusions of lay witnesses are not competent evidence and cannot be considered for the purpose of controverting expert affidavits. *See, e.g., Anderson v. Market Street Developers, Ltd.*, 944 S.W.2d 776, 779 (Tex.App.-Eastland 1997, writ denied).

Appellant has not presented any evidence to dispute the expert testimony of Stubblefield and Todd. She presented no evidence that the City knew a specific act would cause identifiable harm or that the damage to her property was "necessarily an incident to, or necessarily a consequential result of" the City's decision to conduct a more thorough study into its flood drainage, which resulted in more of her property being placed in the one-hundred year flood plain on the revised FEMA map. In fact, during her deposition when asked if she had any evidence the City intentionally placed her property in the flood plain, she said "No, I have no proof."

Appellant claims the facts in *City of Dallas v. Jennings*, 142 S.W.3d 310 (Tex. 2004) and *Tarrant Regional Water District v. Gragg*, 151 S.W.3d 546 (Tex.2004) support her position of a physical taking by the City. However, we agree with the City these cases are easily distinguishable.

In *Jennings*, the court determined a governmental entity can be liable for a taking if it knows a specific act is causing identifiable harm or knows with substantial certainty damages are necessarily an incident to or necessarily a consequential result of the government's actions. *Jennings*, 142 S.W.3d at 314. In that case, the supreme court held there was insufficient evidence that the city knew flooding would occur on the plaintiffs' property when it unclogged a sewer line. *Id.* Similar to the facts here, appellant has failed to present any evidence the City acted while knowing specific damage would occur to her property.

In *Gragg*, the supreme court held that evidence of the water district releasing 23,000 cfs in excess of the natural peak flow for the creeks on more than one occasion causing flooding and damage to plaintiffs' ranch was legally sufficient evidence of its intent to cause damage to the property. 151 S.W.3d at 552, 554. The court again acknowledged the need to show the government entity's intent to cause damage. However, unlike the current facts, the City has not created any physical structure that is responsible for any flooding on appellant's property nor has appellant showed any specific intent on the part of the City to cause damage to her property. Further, we note the plaintiffs in *Gragg* relied on the testimony of two hydrologists to establish causation. As previously stated, appellant presented no such expert testimony to support her claim. Thus, appellant's reliance on these cases is misplaced.

■ Accordingly, appellant has failed to produce competent summary judgment evidence raising a genuine issue of material fact as to the first element of an inverse condemnation claim—an intentional taking by the City. Thus, the trial court did not err in granting the City's no-evidence motion for summary judgment against appellant's claim for a physical taking.

■ We now turn to whether appellant produced evidence of a regulatory taking to overcome the City's no-evidence motion for summary judgment. In her affidavit, she claims the City's conduct and regulations have rendered her property unusable and worthless; however, she also states "I have only been able to get a fraction of prior compensation for that building," indicating she is still receiving some income from tenants. During appellant's deposition, she acknowledged that she still receives $1700 in rent from one of her tenants. She agreed the rents she receives have an economic benefit to her.

The City supported its position with Todd's affidavit. He stated that "based on my knowledge of the property, the Plaintiff is continuing to use her property in the same manner it has been used in the past." He further stated the following:

I recently checked on the status of the use of Plaintiff's property and my investigation indicates that Plaintiff is still using the property as before the events in question. The Scoreboard is still in operation on the property as before. It appears the tenant of the second building may have changed to JK Services (it was previously another service company). The fact that Plaintiff is still renting and leasing the property to third-parties shows that she continues to use the property for an economically viable use in the generation of rental income. From my investigation, this is the same type of use as before the events in question.

He acknowledged that appellant has not made any requests for an application, permit, or use for her property that has been denied by the City. She has not sought any variance or administrative appeal related to her property. To his knowledge, she

has not tried to pursue any options through FEMA regarding her property. During his deposition, Todd again confirmed that "the use of the land has not changed between the '92 study and the 2006 study. It's the same use." Thus, appellant has failed to provide any evidence that the City has denied her of all economically viable use of her property. *See Mayhew*, 964 S.W.2d at 935.

Appellant further contends the City has unreasonably interfered with her use and enjoyment of her property because by putting it in the flood plain, a contract for sale of the land fell through. She also claims the City has said it will never issue any certificates of occupancy for the property, which has directly, substantially, and unreasonably interfered with her ability to sell the property.

In her affidavit, appellant summarily states "the buyers terminated the contract to purchase because the City of Rockwall intentionally placed the Property within the City's 100–Year Flood Boundary." The contract for the sale of her property contains a special provision under paragraph twelve that states in part, "This contract is contingent upon all records showing this property is not with the FEMA 100 year flood plain, excepted as noted on existing survey." However, the commercial contract termination notice indicates the buyers terminated the contract "in accordance with paragraph 7B," which allows the buyer to terminate "for any reason within 15 days after the effective date ... by providing the Seller written notice of termination." Therefore, appellant's conclusory statement regarding the buyers terminating the contract because

the property is in the flood plain is not supported by any evidence.

While she further claims the City has said it will not issue any certificates of occupancy, which has interfered with her ability to sell her property, she has provided no evidence that she or anyone else has tried to obtain certificates of occupancy from the City. One buyer backing out of one contract is not evidence of the City unreasonably interfering with her enjoyment of her property. She has failed to provide any evidence of a "direct, immediate, and substantial impact" making her property unusable for its intended purpose. *See Cummins*, 175 S.W.3d at 54. Rather, the undisputed evidence shows appellant continues to receive rental income from the property; therefore, she continues to reap some of the benefit. Thus, the trial court did not err in granting the City's no-evidence motion for summary judgment against appellant's claim for a regulatory taking.

### Conclusion

Having concluded the trial court properly granted the City's no-evidence motion for summary judgment, we need not address the City's traditional motion for summary judgment. Because appellant has failed to allege a valid inverse condemnation claim, governmental immunity applies. As such, the trial court properly granted the City's plea to the jurisdiction.