**Reversed and Remanded and Opinion Filed February 8, 2017**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-15-01361-CV

**BILLY D. BURLESON, JON J. MARK, AND CRAIG A. BENNIGHT, Appellants**
**V.**
**COLLIN COUNTY COMMUNITY COLLEGE DISTRICT, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-04944-2014**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

This is a whistleblower case brought by three police officers, Billy Burleson, Jon Mark, and Craig Bennight (collectively, the Officers) against their employer Collin County Community College District (the College) for adverse personnel action against them after they reported crimes. In a plea to the jurisdiction, the College claimed that sovereign immunity defeated subject matter jurisdiction because the College did not take adverse personnel action against the Officers. The College further argued that Mark and Burleson did not meet the jurisdictional prerequisites for a whistleblower grievance. The trial court granted the plea.

In two issues, the Officers now challenge the trial court's rulings and assert that the trial court should have made findings of fact and conclusions of law.

As discussed below, we conclude that the trial court erred by granting the plea to the jurisdiction because the undisputed facts as developed at this preliminary stage show that for the

purposes of the College's plea to the jurisdiction there is a fact issue regarding whether the College's alleged retaliations were adverse personnel actions. We also conclude that the record shows that (i) Mark initiated the jurisdictionally required grievance regarding his claim that he received a retaliatory adverse personnel action for reporting an illegal incarceration and (ii) Burleson's allegations state a whistleblower claim because they allege a causal connection between his report to outside law enforcement and the alleged retaliation.

Accordingly, we reverse the trial court's order and remand for further proceedings.

## I. Background[1]

The Officers are employed by the College, which is a public community college district. In 2014, Bennight and Burleson were investigating the theft of books from the College bookstore when they began to suspect a scheme to defraud the College, corruption, and a cover-up by high ranking officials. They reported violations of the law related to the bookstore, including coercion of a public servant, public corruption, tampering with evidence, and tampering with a witness to various law enforcement authorities.

Bennight and Burleson also reported to the College's police chief, Michael Gromatzky, that employees were stealing from the bookstore, but they were ordered to close their investigation. After the College took action that Bennight and Burleson deemed retaliatory, they filed whistleblower grievances with the College. Those grievances were denied.

Mark also complained to Gromatzky about illegal activity. Specifically, he sent an email to Gromatzky and others complaining that he was ordered to lock an intoxicated person in the closet for four hours and that this constituted the crime of official oppression. Mark filed a whistleblower grievance with the College after it took action he believed was retaliatory. The grievance was denied.

---

[1] We derive this statement of facts from the Officers' petition and the College's plea to the jurisdiction evidence.

–2–

The Officers then sued the College alleging violations of the Texas Whistleblower Act. The College responded by filing a plea to the jurisdiction, claiming that (i) there were no adverse personnel actions as the Act requires, and (ii) Mark and Burleson failed to file a whistleblower grievance. To support its plea, the College filed the affidavit of Norma Allen, the College's Associate Vice-President for Human Resources and Organizational Development. Her affidavit attached policies, job descriptions, and employment records maintained by the College. The Officers responded by arguing that the College did not (i) allege any pleading deficiencies or (ii) adduce any evidence that negated their factual allegations.

The trial court conducted a hearing and later signed an order granting the plea. Although the Officers requested findings of fact and conclusions of law, no such findings were made.

The Officers timely appealed, and the trial court clerk's and reporter's records were thereafter filed. The original *reporter's record*, however, ostensibly did not include an amended exhibit that the trial court admitted as an addendum to the plea to the jurisdiction.

The Officer's appeal presents two issues:

1.    The trial court committed reversible error by granting the College's plea to the jurisdiction because the trial court had jurisdiction over the Officer's Whistleblower Act claims; and

2.    The trial court erred by not issuing findings and conclusions despite the Officers' timely request and reminder.

For the reasons discussed below, we conclude that the Officers met the jurisdictional prerequisites for filing a grievance and the evidence does not conclusively negate the allegations that the College engaged in retaliatory adverse personnel actions against the Officers after they made Whistleblower reports. Accordingly, we do not reach the Officers' second issue.

The parties also disagree whether our scope of review includes a record supplement the College filed after the trial court granted the College's plea and after the Officers perfected their

–3–

appeal. We agree with the Officers that the College's supplement is not within our scope of review because a party may not unilaterally supplement an evidentiary record.

## II. Analysis

### A. Unilateral Supplementation of the Record

As a preliminary matter we address a dispute regarding the extent of the record before us. At some point after filing its plea to the jurisdiction, the College discovered that it had not filed with its plea documents referred to as Exhibit E. At the plea hearing, the College asked the court to accept a document marked as Exhibit E that the College proffered as a corrected version of the materials that it had intended to include with its plea. The trial court accepted the proffered Exhibit E and "admitted it" as an "addendum." That document, however, was not included in the trial court record delivered to our clerk as part of the appellate record.

The College thereafter discovered that omission and, without prior trial or appellate court leave, filed in the trial court a document captioned "Addendum To Defendant's Plea To The Jurisdiction." The College then filed a supplemental *clerk's* record containing that "Addendum" and urges us pursuant to TEX. R. APP. P. 34.6(e) to consider this material over the Officers' protest. We disagree with the College for several reasons.

First, Rule 34.6(e) provides the procedure to be followed when a party challenges the accuracy of the *reporter's* record after it has been filed in the appellate court. *See* TEX. R. APP. P. 34.6(e). The rule provides:

(e) Inaccuracies in the Reporter's Record.

(1) Correction of Inaccuracies by Agreement. The parties may agree to correct an inaccuracy in the reporter's record, including an exhibit, without the court reporter's recertification.

(2) Correction of Inaccuracies by Trial Court. If the parties cannot agree on whether or how to correct the reporter's record so that the text accurately discloses what occurred in the trial court and the exhibits are accurate, the trial court must–after notice and hearing–settle the dispute. If the court finds any

–4–

inaccuracy, it must order the court reporter to conform the reporter's record (including text and any exhibits) to what occurred in the trial court, and to certify and file in the appellate court.

(3) Correction After Filing in Appellate Court. If the dispute arises after the reporter's record has been filed in the appellate court, that court may submit the dispute to the trial court for resolution. The trial court must then proceed as under subparagraph(e)(2).

But it is not clear that the rule applies because the document that the Addendum ostensibly addresses is part of the clerk's record instead of the reporter's record. And the hearing transcript does not specify whether it was a document admitted for purposes of correcting the clerk's record or as a standalone exhibit to be included in the reporter's record. The distinction matters because Rule 34.6(e) concerns inaccuracies in the reporter's record, not the clerk's record.

Second, the College implies that the evidence was lost or destroyed, but there is nothing to establish that premise. There is also no indication that there was an agreement of the parties as to the lost evidence or that the issue was submitted to the trial judge for resolution. This is not a case where the reporter had the exhibit but did not include it in the record. Rather, it appears that the reporter did not have the amended exhibit to include in the record.

Third, assuming this involved a reporter's record question, we cannot consider a correction to the reporter's record [formerly called the statement of facts] unless and until it has been agreed to by the parties or approved by the trial judge. *See First State Bank & Trust Co. v. George*, 519 S.W.2d 198, 208–209 (Tex. Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.). Moreover, the evidence here was not submitted in a supplemental reporter's record, but rather as an after-the-fact unilateral addition to the clerk's record. There is nothing to establish that these materials are the same materials tendered to and considered by the trial court.

The College relies on *Amador v. State*, 221 S.W.3d 666, 667 n.48 (Tex. Crim. App. 2007) to argue that appellate courts must construe the rules liberally. A liberal construction, however, does not mean that we disregard the rules in their entirety. Under these circumstances, the

–5–

supplemental clerk's record is not properly included in our consideration of whether the College met its burden.[2]

**B.      Did the trial court err in granting the plea to the jurisdiction?**

The Officers argue that the trial court had jurisdiction over their whistleblower suit because they met the jurisdictional prerequisites for a whistleblower grievance and the College failed to establish as a matter of law that there was no adverse personnel actions. We agree.

### 1.      Standard of Review and Applicable Law

A plea to the jurisdiction challenges the court's authority to decide a case. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149 (Tex. 2012). If a governmental unit has immunity from suit, a trial court lacks subject matter jurisdiction. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). We review de novo a plea questioning the trial court's subject matter jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A governmental unit's plea to the jurisdiction may challenge either (i) whether the petition adequately alleges facts supporting the trial court's subject matter jurisdiction or (ii) the existence of jurisdictional facts. *Id*. at 226–27. Unless the party contesting subject matter jurisdiction challenges and conclusively negates a plaintiff's jurisdictional allegation, the court must assume that fact to be true for jurisdictional purposes. *Jones v. City of Dallas*, 310 S.W.3d 523, 529 (Tex. App.—Dallas 2010, pet. denied).

When, as here, the governmental unit challenges the existence of jurisdictional facts and the parties submit evidence relevant to that challenge, we must consider that evidence when necessary to resolve the jurisdictional issues raised. *Miranda,* at 227–28. We must also take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve

---

[2] The materials at issue pertain to Bennight's May grievance. But even if we considered these materials, it would not change the outcome.

any doubts in the nonmovant's favor. *Id*. at 228. If the evidence raises a fact question on jurisdiction, the trial court cannot grant the plea, and the factfinder must resolve the issue. *Id*. at 227–28. On the other hand, the trial court must rule on the plea as a matter of law if the evidence is undisputed or fails to raise a fact question. *Id.* at 228. This standard generally mirrors that of a summary judgment. *Id.*

Generally, governmental entities are immune from suit and liability under the sovereign immunity doctrine. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). And sovereign immunity *from suit* deprives a court of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (emphasis added).

The Whistleblower Act, however, waives immunity from suit to the extent a governmental entity is liable under the Act's provisions. *See* TEX. GOV'T CODE § 554.0035. But a plaintiff must properly allege a violation of the Act for immunity to be waived. *Lueck*, 290 S.W.3d at 881.

The Whistleblower Act protects "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE § 554.002(a). An appropriate law enforcement authority is one who is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to (i) regulate under or enforce the law alleged to be violated in the report or (ii) investigate or prosecute a violation of criminal law. *Id.*

Here, the College did not challenge whether the Officers' petition states sufficient jurisdictional facts and the College's plea evidence provides the relevant evidence. Thus, the issue is whether the College's evidence conclusively negates the Officers' allegations of an adverse personnel action in retaliation for reporting of an illegal act, or whether the evidence,

when viewed most favorably to the Officers, is sufficient to at least raise a fact issue regarding whether the alleged retaliation constitutes an adverse personnel action.

### 2. Was there an adverse employment action against the Officers?

#### a. Introduction.

The College maintains that the trial court lacked subject matter jurisdiction because it conclusively established that there was no "adverse personnel action" as the Act requires to waive sovereign immunity.

The Texas Whistleblower Act defines "personnel action" as "an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation." TEX. GOV'T CODE § 554.001. But the statute does not define what constitutes an "adverse personnel action."

In *Montgomery County v. Park*, 246 S.W.3d 610, 614–15 (Tex. 2007), the Texas Supreme Court adopted, with some modifications, the United States Supreme Court's test for title VII retaliation. *Id.* at 615 (*citing Burlington N. & Santa Fe Ry Co. v. White*, 548 U.S. 53 (2006)). The *Park* court stated that "for a personnel action to be adverse within the meaning of the Act, it must be material, and thus likely to deter a reasonable, similarly situated employee from reporting a violation of the law." *Id.* at 612.

This standard's purpose is to allow claims based on retaliatory actions "likely to deter" reporting of governmental law violations while weeding out "petty slights" and "minor annoyances." *Id.* at 614–15. The test accounts for the fact that an employer's actions could be material in some situations, but immaterial in others. *Id.* at 615. For example, a schedule change may make little difference to some employees, but may matter enormously to a caregiver with school age children. *See id.* (citations omitted). Whether an action is adverse within the

meaning of the Act is generally a question of law, although a factfinder must decide disputed issues of predicate fact. *Id.*

*Park* identified nonexclusive factors to consider when determining whether a personnel action is "adverse" within the Act's meaning, including whether the personnel action negatively affected the employee's (i) prestige, (ii) opportunity for advancement, (iii) working conditions, (iv) pay or income, or (v) ability to obtain outside employment. *See id.* The "presence or absence of any one of these factors, however, is not dispositive." *Id.*

As discussed below, we conclude the College did not establish as a matter of law that there was no adverse personnel action against the Officers.

### b. Mark

On April 10, 2014, Mark sent an email to Gromatzky and others (including the College president) reporting that he was ordered to lock an intoxicated person in a closet for four hours and that this constituted the crime of official oppression. Six days later, Mark was "written up" with a form entitled "Employee Coaching Form." The form contains the following boilerplate language:

> Constructive Feedback: Be specific, describing the job responsibilities or behavior that need to change and how the employee needs to change to meet expectations. (Note: Employee Coaching is not considered formal discipline. However, an employee's failure to meet and sustain acceptable performance or behavior may result in formal disciplinary action in the future.)

The form identifies the "specific results to be required for acceptable improvement" as: "Effective Immediately, Officer Mark must follow all Collin College Police Department policies and procedures . . ." and concludes that "Any future violation of the same or similar nature will result in disciplinary action up to and including termination."

Although the form is dated April 16, Mark was not given a copy until May 15, when he was also told that he would be assigned to "deep nights due to the violations claimed in the

coaching report."[3]  The next day, Mark filed a whistleblower grievance with the College.  The grievance was denied.

Relying on the verbiage in the standard form, the College argues that employee coaching and constructive feedback do not constitute adverse personnel action as a matter of law. Although the College cites several cases to support its argument, none of them are whistleblower cases with similar facts, and none hold that a written reprimand can never be an adverse personnel action as a matter of law.  *See, e.g., Niu v. Revcor Molded Products Co.*, 206 S.W.3d 723, 732 (Tex. App.—Fort Worth 2006, no pet.) (retaliation case with no evidence that reprimands were related to termination finding that "taken by themselves" reprimands did not rise to the level of adverse employment action); *City of Dallas v. Giles,* No. 05-15-00370-CV, 2016 WL 25744, at *4 (Tex. App.—Dallas Jan. 4, 2016, no pet.) (mem. op.) (memo to employee's supervisor about failure to follow procedure but with no further action not adverse employment action).

The College also relies on *Harrison v. Corrections Corp.*, 476 F.App'x 40, 44–45 (5th Cir. 2012), an unpublished Fifth Circuit opinion holding that an employee suffered no adverse personnel action when he was reprimanded and transferred to another department.  *Id.*  Noting that the employee testified that the reprimand was "fair," the court reasoned that "a reasonable employee would not be dissuaded by a reprimand and punishment he considered to be fair."  *Id.*

Here, Mark did not admit that being written up was fair.  Notwithstanding decisions concluding that a reprimand was not adverse under the facts of a particular case, the standard for what constitutes an adverse personnel action is not as rigid as the College suggests.  As the *Niu* court observed, the standard is objective and the standard is general "because the significance of

---

[3] Deep night shifts run from 6:00 p.m. to 6:00 a.m.

any given act of retaliation will often depend upon the particular circumstances, 'context matters.'" *Niu*, 206 S.W.3d at 731 (*citing Burlington*, 548 U.S. 53).

For example, in *City of El Paso v. Parsons*, 353 S.W.3d 215, 227–28 (Tex. App.—El Paso 2011, no pet.), the court held that the evidence was sufficient to establish adverse personnel action when a firefighter was transferred to a less prestigious position. *Id.* Even though the firefighter received no pay reduction or job title change, his responsibilities were reduced and he was moved from the training academy to headquarters. *Id.* In considering the totality of the circumstances, the court concluded that the firefighter was subjected to adverse personnel action. *Id.* at 238.

Accordingly, we examine Mark's reprimand in context. Although the reprimand was entitled "coaching," and purported to give constructive feedback, the overall tone suggests something more. The form states that it is not "formal" discipline, but also warns that further infractions may result in termination. Therefore, it threatens negative repercussions regardless of whether it is formal or informal discipline.

Moreover, the reprimand accompanied an undesirable shift change that Mark was told resulted from the reprimand. Under the totality of these circumstances, we cannot conclude as a matter of law that these actions would not deter a similarly situated employee from reporting a violation of law.

### c.      Bennight

Bennight filed two grievances with the College, one in May and another in July. The evidence concerning the May grievance, however, is included in the supplemental materials that are not properly part of the appellate record. Therefore, we do not consider this evidence in our analysis.

Bennight's July 17 grievance complained that he learned on July 4 that his fall schedule had been changed and he would be required to work "deep nights"[4] He was also being transferred to a different campus. Bennight attached to that grievance a copy of his previous schedule as well as the new one.

Bennight further said that he was hired as an investigator and could not perform his duties for that position while working the deep night shift because he could not file cases with the district attorney when the courts are closed. He also said, "I believe my transfer and change in shifts are retaliation for my good faith reports to outside law enforcement agencies of significant thefts and possible corruption within Collin College."

The College relies on one sentence in the Allen Affidavit to establish that Bennight suffered no adverse personnel action. That sentence states, "the document submitted by Mr. Bennight as part of his grievance was apparently one of several drafts, and no schedule changes or transfers have been finalized, communicated, or implemented for the 2014–2015 academic year." According to the College, this evidence conclusively establishes that no schedule change happened. We disagree.

An affidavit's purpose is to set forth a definitive statement of facts based on personal knowledge. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). Although Allen generally states that she has personal knowledge of the facts as the records custodian, her statement concerning Bennight's schedule is not definitive. To the contrary, the use of the word "apparently," renders the statement equivocal and conclusory and implies something less than personal knowledge. An affiant's understanding does not equate to personal knowledge. *See Ryland Group v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam). Conclusory statements

---

[4] His regular schedule had been Wednesday from 8:00 a.m. - 4:00 p.m., Thursday from 6:00 a.m. - 2:00 p.m. and Fridays and Saturdays from 6:00 a.m. to 6:00 p.m.

are not competent evidence in a plea to the jurisdiction. *See Strother v. City of Rockwall*, 358 S.W.3d 462, 470 (Tex. App.—Dallas 2012, no pet.).

In addition, Allen's statement that no schedule changes had been communicated simply contradicts Bennight's statement rather than establishing the absence of communication as a matter of law. If the evidence raises a fact question, the issue must be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227–28.

The College also claims that the evidence establishes that there was a "miscommunication" about the schedule. In support of its argument, the College relies on a letter from the College's counsel asking for information on how Bennight was told that his shift would be changed and where he obtained the schedule he attached to his grievance. In that letter, counsel describes the situation as one of "miscommunication." Counsel's self-serving characterizations, however, do not prove that a miscommunication actually occurred. If anything, the letter suggests that a shift schedule change was communicated, albeit erroneously, and thus demonstrates the absence of conclusive evidence that Bennight's schedule change was not implemented and communicated to him. Thus, the College failed to establish as a matter of law that there was no adverse personnel action against Bennight.

### d.     Burleson

In January or February 2014, Burleson reported to Gromatzky that employees were stealing more than $1,000,000.00 from the college bookstore. On March 7, Gromatzky ordered him to "close" his investigation of the bookstore theft. That same day, Burleson reported the crimes of coercion of a public servant and public corruption to outside law enforcement authorities.

On March 18, the College changed Burleson's schedule from the 10:00 a.m.- 6:00 p.m. shift to the 2:00 p.m.-10:00 p.m. shift and removed him from "flex time." Burleson filed a

whistleblower grievance on March 26 for this alleged retaliation. The College denied the grievance.

The College relies on the Burleson grievance hearing officer's findings attached to the Allen affidavit to show that there was no adverse personnel action. The findings say, "according to the records, it appears Burleson was ultimately not assigned [to the new schedule] . . . Gromatzky indicated that he instructed Hogan not to change Officer Burleson's schedule . . . ."

We are not persuaded by this argument. As the Officers argue, the hearing examiner's findings are not competent evidence.[5] The records referenced are not part of the record, so there is no basis for his conclusion. *See Riner v. Newman*, 353 S.W.3d 312, 321 (Tex. App.—Dallas 2011, no pet.) (conclusory statement is one that does not provide the underlying facts in support of the conclusion). As previously noted, the use of the word "apparently" is equivocal and conclusory. Conclusory statements are not competent evidence. *See Strother*, 358 S.W.3d at 470. Moreover, that Gromatzky told someone not to change the schedule does not conclusively establish that it did not occur.

The Officers' live pleading asserts that Burleson's schedule was changed and he was informed that he would no longer have flex time, and the College failed to conclusively controvert these allegations.

The College further contends that the loss of flex time is not an adverse personnel action. According to the College, "as a matter of policy it is outside of the statute's intended reach to cause a governmental entity to be responsible to pay . . . for its employee's lost opportunity to earn compensation for outside part-time work . . . ." Policy considerations, however, exceed the scope of our review. The Legislature is best suited to weigh the conflicting public policies

---

[5] The Officers also objected to the evidence in the court below.

associated with waiving immunity. *See Tex. Nat. Res. Conserv. Comm'n v. Davy*, 74 S.W.3d 849, 854 (Tex. 2002).

The record reflects that Gromatzky allowed Burleson to work a flexible schedule because he was aware of Burleson's precarious financial situation following a divorce and the fact that without additional part-time income Burleson would be unable to survive financially. Burleson also specifically quantifies at least one instance of lost part-time income resulting from being changed from flex time. But the loss of additional income is not the only negative impact Burleson identifies. Burleson's grievance also says that Gromazky was aware that Burleson has three young children, and his time with them is limited because of the divorce. Forcing him to work the new schedule would reduce that time even further.

As the *Burlington* court noted, a schedule change that might "be immaterial in some situations is material in others." *Burlington*, 548 U.S. at 69; *see also Montgomery Cnty. v. Park*, 246 S.W.3d 610, 615 (Tex. 2007). Here, there is at least a fact question about the materiality of Burleson's loss of flex time. Under these circumstances, we cannot conclude that the College established that there was no adverse personnel action as a matter of law. *See Jones*, 310 S.W.3d at 529

The College also alleges that there is no causal connection between Burleson's report to outside law enforcement and the alleged retaliation by the College police chief. *See Cnty. of Bexar v. Steward*, 139 S.W.3d 354, 358 (Tex. App.—San Antonio 2004, no pet.). Specifically, the College claims that the alleged retaliation occurred on February 19, 2014, but Burleson did not report to outside law enforcement agencies until March 7, 2014.

The College relies on a paragraph in Burleson's grievance stating that, "All of this began on February 19, 2014." Burleson then describes a telephone conversation with

–15–

Gromatzky that occurred the day after he met with the College president about the bookstore theft. According to Burleson, Gromatzky was screaming, cursing, and making wild accusations.[6]

The same grievance, however, also states that Burleson's schedule was changed and he was removed from flex time on March 18 and 19, which occurred after the March 7 report to outside authorities. Therefore, despite the reference to historical mistreatment, Burleson's grievance states the causal connection required for a Whistleblower claim. *See Canutillo Ind. Sch. Dist. v. Farran,* 409 S.W.3d 653, 656 (Tex. 2013) (to show causation must demonstrate discriminatory conduct after reporting a violation); *see also City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 69 (Tex. 2000) (reassignment to low-level security duty after making report showed causation).

Because the College did not conclusively establish that there was no adverse personnel action against any of the Officers, the trial court erred in granting the plea to the jurisdiction. We thus sustain the Officer's first issue.

### 3. Did Mark submit a grievance that comports with his petition?

The College also argues that Mark did not meet the jurisdictional prerequisites for a whistleblower suit because his grievance did not address the actions he complains of in his original and amended petitions. Specifically, the College maintains that the lawsuit concerns the bookstore theft. But Mark's grievance also complained about other matters.

A claimant must "initiate action under the grievance or appeal procedures" of his governmental employer before filing suit under the Whistleblower Act. *See* TEX. GOV'T CODE § 554.006(a); *Mata v. Harris Cnty.*, No. 14-14-00363-CV, 2016 WL 675379, at *3 (Tex. App.— Houston [14th Dist.] Feb. 18, 2016, no pet.). Compliance with section 554.006(a)'s initiation

---

[6] The College argues that this abusive behavior does not constitute adverse personnel action, but we do not understand the Officers' appellate argument to assert that it does.

requirement is a jurisdictional prerequisite. *See Tarrant County v. McQuary*, 310 S.W.3d 170, 174 (Tex. App.—Fort Worth 2010, pet. denied); *see also* TEX. GOV'T CODE § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

While Mark's grievance may not pertain to reporting theft at the bookstore, the pleadings reflect that the lawsuit is not limited to this allegation. And it is not accurate to state that the live petition does not match the grievance. Specifically, Mark's May grievance states that he sent an email reporting that he had been ordered to lock an intoxicated person in a closet for four hours and this constituted the crime of official oppression. The grievance also says he was written up for having sent the email, which write up said that "Any future violation of the same or similar nature will result in disciplinary action up to and including termination."

Likewise, the amended petition asserts:

On or about April 10, 2014, Officer Jon Mark reported to Collin College Police Chief Gromatzky and Collin College Director of Public Safety, Ed Leathers, that certain laws were being violated at the College. . . . Specifically, Officer Mark reported, as stated in his grievance, that there was an order to lock an intoxicated person in a closet for four (4) hours and then release them. . . . . Officer Mark informed Grozmatzky and Leathers that this was a violation of the individuals rights and was "Official Oppression" . . . . . Soon after Officer Jon Mark made his reports, Defendant immediately began to [subject] Officer Jon Mark to . . . retaliation. . . .

Officer Jon Mark was retaliated against by Defendant and suffered the following adverse personnel actions: . . . On or about May 15, 2014, Officer Jon Mark received a retaliatory reprimand, write-up, or coaching form, dated April 16, 2014 which stated that Officer Jon Mark had allegedly violated policy and that "Any future violation of the same or similar nature will result in disciplinary actions up to and including termination."

Because the grievance gave notice of the same allegations in the lawsuit, we conclude that Mark complied with the jurisdictional prerequisites for a whistleblower suit regarding those circumstances.

**D.      Did the trial court err by not making findings of fact and conclusions of law?**

We have resolved the Officers' first issue in their favor.  Therefore, we need not also consider whether the trial court erred by not making the requested findings of fact and conclusions of law.  *See* TEX. R. APP. P. 47.1.

### III.   Conclusion

We have concluded that the trial court erred in granting the plea to the jurisdiction.  We thus reverse the trial court's order and remand for further proceedings consistent with this opinion.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


151361F.P05

–18–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BILLY D. BURLESON, JON J. MARK,
AND CRAIG A. BENNIGHT, Appellants

No. 05-15-01361-CV     V.

COLLIN COUNTY COMMUNITY
COLLEGE DISTRICT, Appellee

On Appeal from the 416th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 416-04944-2014.
Opinion delivered by Justice Whitehill.
Justices Bridges and Lang-Miers
participating.

    In accordance with this Court's opinion of this date, the order of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion..

    It is **ORDERED** that appellants BILLY D. BURLESON, JON J. MARK, AND CRAIG A. BENNIGHT recover their costs of this appeal from appellee COLLIN COUNTY COMMUNITY COLLEGE DISTRICT.

Judgment entered February 8, 2017.